IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 24-177-1 |
| ALBERTO CINTRON | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Alberto Cintron faces sentencing for his participation as a leader of a drug trafficking operation that involved his possession and distribution of significant quantities of deadly controlled substances, including fentanyl and methamphetamine, and his possession of multiple firearms in furtherance of that drug trafficking, all of which had a detrimental impact on the communities in this District. On July 15, 2025, Cintron pleaded guilty to multiple counts of distribution and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), as well as firearms offenses and related charges in connection with his role in this drug trafficking organization. He faces a mandatory minimum of 15 years of imprisonment and an advisory Sentencing Guidelines range of 420 months to life imprisonment, due in part to his status as a career offender. In this case, the defendant and the government entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), in which the parties agreed to recommend a sentence between 216 and 264 months of imprisonment. Based on the defendant's criminal conduct in this case, as well as the Section

3553(a) sentencing factors, the Government respectfully recommends a sentence at the high-end of the C-Plea range, or 264 months' imprisonment. While still below the advisory Sentencing Guidelines range, such a sentence would adequately account for the defendant's criminality, as well as his acceptance of responsibility and the lack of any prior significant terms of imprisonment.

For these reasons, as well as those in the Government's Sealed Supplement to its Sentencing Memorandum, the government respectfully requests the Court impose a sentence at the high end of the C-plea range, or 264 months' imprisonment.

## I.    BACKGROUND

### A.    Summary

The defendant, Alberto Cintron, stands convicted of Counts 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, and 17, of the Amended Indictment,[1] charging him with: conspiracy to distribute and possession with intent to distribute 50 grams or more of methamphetamine and 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)) (Count 1); distribution of 50 grams or more of methamphetamine, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2 (Counts 2, 3, and 5); distribution of 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in

---

[1] Defendant was charged with two additional counts in the Amended Indictment, Counts 8 and 9, which are lesser-included offenses of Counts 11 and 12, respectively, and merge for purposes of sentencing; therefore, the government will move to dismiss Counts 8 and 9 at the time of sentencing.

violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count 4); distribution of fentanyl, and aiding and

abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 (Count 6);

distribution of 50 grams or more of methamphetamine, and fentanyl, and aiding and abetting, in

violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(C), and 18 U.S.C. § 2 (Count 7); possession

with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §

841(a)(1), (b)(1)(A) (Count 10); possession with intent to distribute 5 grams or more of

methamphetamine, and fentanyl, within 1,000 feet of a school in violation of 21 U.S.C. §§ 860

and 841(a)(1), (b)(1)(B), (b)(1)(C) (Count 11); possession with intent to distribute 400 grams or

more of fentanyl within 1,000 feet of a school in violation of 21 U.S.C. §§ 860 and 841(a)(1),

(b)(1)(A) (Count 12); possession of a firearm in furtherance of a drug trafficking crime in

violation of 18 U.S.C. § 924(c)(1)(A) (Count 13); possession of a firearm by a felon in violation

of 18 U.S.C. § 922(g)(1) (Count 14); and maintaining a drug house in violation of 21 U.S.C. §

856(a)(2) (Count 17).

### B.    The Defendant's Illegal Drug Trafficking and Firearms Possession

The facts of this case and the investigation are succinctly and adequately summarized in

the Presentence Investigation Report ("PSR") at Paragraphs 16 through 30. In short, in July

2023, law enforcement learned that Cintron was the leader of a drug trafficking group ("DTG")

distributing methamphetamine and fentanyl in the Montgomery County, Chester County and

Philadelphia areas. Law enforcement utilized a confidential human source ("CHS") and then an

undercover Pennsylvania state trooper ("UC") to conduct numerous controlled purchases of

3

methamphetamine and fentanyl either directly or indirectly from Cintron (referred to as "Bert" or "Nephew") and his close associate and co-conspirator Edwin Vasquez (referred to as "Unc"). *See* PSR ¶ 24 (chart detailing all of the charged controlled purchases). Leading up to each transaction, the CHS or UC contacted the defendant by telephone to request a quantity of drugs and discuss pricing. On each date, either the defendant sold narcotics to the CHS or UC, or directed his co-conspirator Vasquez to do so. As confirmed by lab analyses, these substances included at least 50 grams of methamphetamine (on August 23, 2023, September 15, 2023, October 8, 2023 and October 20, 2023), or at least 50 grams of a mixture and substance containing a detectable amount of methamphetamine (September 28, 2023), and/or fentanyl mixed with xylazine (October 13, 2023 and October 20, 2023).

The investigation eventually led law enforcement to intercept communications over Cintron's and other co-conspirators' telephones pursuant to a court-authorized Pennsylvania state wiretap. Through the use of intercepted communications, coupled with physical surveillance, investigators were able to gain a true understanding of how Cintron's DTG operated. The investigation revealed a common pattern or method of conducting business, namely, contact would be made between the CHS, the UC, or a sub-dealer (intercepted on the wire) with either Cintron or Vasquez. Cintron would either direct his associate, Vasquez, to actually deliver the drugs to the customer, or the defendant would deliver the controlled substances himself. It was apparent from these communications and interactions that Cintron was the one running the operation and giving direction to his uncle. At a minimum, the two were jointly responsible for distribution of these bulk quantities of drugs to sub-dealers, who would then further re-distribute

drugs down the chain to eventually reach the end-users of the drugs.

From in or about July 2023 through October 2023, the Cintron DTG distributed, or possessed with the intent to distribute, more than 5 kilograms of methamphetamine, more than 1,000 grams of fentanyl, and other controlled substances. At the Change of Plea hearing, the defendant admitted that at least 6,033 grams of methamphetamine (mixture), which includes 5,077 grams of methamphetamine actual or ice, and 1,297 grams of fentanyl were distributed by him, possessed by him with the intent to distribute, or were attributable and reasonably foreseeable to him pursuant to an agreement or conspiracy with Edwin Vasquez, Adrian DeJesus (a fentanyl supplier), and others, to distribute controlled substances.

Defendant Cintron and his co-defendant Edwin Vasquez distributed quantities of methamphetamine, fentanyl, and other controlled substances to multiple sub-dealers who redistributed the controlled substances to others in and around the Eastern District of Pennsylvania. Four of these sub-dealers are referenced in the Amended Indictment, with details of intercepted conversations and meetings between them and Cintron also detailed as overt acts of the charged conspiracy. The defendant often coordinated the orders and deliveries and either met with the sub-dealer himself or sent defendant Vasquez to meet with the individual. Each sub-dealer paid the defendant in exchange for delivery of controlled substances.

The defendant stored drugs at different locations, either at a residence he shared with Vasquez, located at 6032 Torresdale Avenue, Philadelphia, PA, or at stash locations. The fentanyl stash location was maintained at 5100 Walker Street, Philadelphia, PA. The

methamphetamine stash location was maintained at 2503 N. 20th Street, Philadelphia, PA. Associates of the Cintron DTG were utilized at each location as a point of contact and who were charged with maintaining security at the residence to protect the stash of controlled substances. The defendant had knowledge of and exercised control over all three of these locations for purposes of storing controlled substances.

The Cintron DTG also utilized processing centers to package controlled substances, specifically fentanyl, for distribution. These centers were located at 7419 Revere Street and 6731 Akron Street in Philadelphia, PA.

Multiple search warrants were executed on October 27, 2023, at residences and stash locations associated with the defendant and his DTG.

At the defendant's residence, 6032 Torresdale Avenue, Philadelphia, law enforcement seized approximately 20.42 grams of methamphetamine, and approximately 10 bundles, or 7.895 grams, of fentanyl mixed with xylazine. Additional methamphetamine was recovered in the toilet after someone attempted to flush the drugs prior to discovery by law enforcement. Law enforcement also seized a Glock Model 43x 9mm semi-automatic pistol, bearing serial number BPHM467, loaded with one bullet in the chamber and 10 bullets in the magazine that was in the defendant's bedroom, in a drawer containing his clothing. Also located in the defendant's bedroom was approximately $9,183.55 in United States Currency, proceeds from the defendant's illegal drug trafficking sales.

At the fentanyl stash location, 5100 Walker Street, Philadelphia, law enforcement seized

approximately **5,547 bags of fentanyl** packaged in approximately 35-40 racks, each containing 10 bundles of fentanyl; the racks were stamped "CARDI B," "BANSHEE," "BAD BUNNY" and "FIREBALL."

At the methamphetamine stash location, 2503 N. 20th Street, Philadelphia, law enforcement seized approximately **7 pounds of methamphetamine**. Lab results confirmed the methamphetamine weighed approximately 3,06.8 grams, with a purity of 88%. In the same bedroom, law enforcement seized an AK 47 style rifle, a Century Arms semi-automatic rifle, model GP 1975 Sporter, caliber 7.62x39mm, bearing serial number Z003255, as well as additional ammunition including six upper receivers for assault rifles.

## II.    MANDATORY MINIMUM AND SENTENCING GUIDELINES CALCULATION

### A.    <u>Statutory Maximum and Mandatory Minimum Sentence</u>

The Court may impose the following statutory maximum and mandatory minimum sentences: Count 1 (conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)), life imprisonment, a 10-year mandatory minimum term of imprisonment, a mandatory minimum 5 years of supervised release up to lifetime supervised release, a $10,000,000 fine, and a $100 special assessment; Counts 2, 3, 5, 7, and 10 (distribution/possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)), life imprisonment, a 10-year mandatory minimum term of imprisonment, a mandatory minimum 5 years of supervised release up to lifetime supervised release, a $10,000,000 fine, and a $100 special assessment; Count 4 (distribution of 50 grams or

more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), 40 years' imprisonment, a 5-year mandatory minimum term of imprisonment, a mandatory minimum 4 years of supervised release up to lifetime supervised release, a $5,000,000 fine, and a $100 special assessment; Count 6 (distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C)), 20 years' imprisonment, a mandatory minimum 3 years of supervised release up to lifetime supervised release, a $1,000,000 fine, and a $100 special assessment; Count 11 (possession with intent to distribute controlled substances within 1,000 feet of a school), 80 years' imprisonment, a 5-year mandatory minimum term of imprisonment, 8 years of supervised release, a $10,000,000 fine, and a $100 special assessment; Count 12 (possession with intent to distribute controlled substances within 1,000 feet of a school), life imprisonment, a 10-year mandatory minimum term of imprisonment,10 years of supervised release, a $20,000,000 fine, and a $100 special assessment; Count 13 (possession of a firearm in furtherance of a drug trafficking crime), lifetime imprisonment, a mandatory minimum 5 years' imprisonment imposed consecutively to any other counts, a $250,000 fine, 5 years of supervised release, and a $100 special assessment; Count 14 (possession of a firearm by felon), 15 years' imprisonment, 3 years of supervised release, a $250,000 fine and $100 special assessment; and Count 17 (maintaining a drug house), 20 years' imprisonment, a $500,000 fine, and $100 special assessment.

Total Maximum and Mandatory Minimum Sentence is: life imprisonment, 15 years' mandatory minimum imprisonment, a mandatory minimum 10 years of supervised release up to

a lifetime of supervised release, a $97,000,000 fine, and a $1,300 special assessment.

    **B.**    <u>**Sentencing Guidelines Calculation**</u>

        Pursuant to USSG § 3D1.2, the offenses underlying all Counts other than Count 13 are grouped for guideline calculation purposes. Count 13 is excluded in the offense level calculus because the statute of conviction requires a specific term of imprisonment (5 years) that must be imposed consecutive to any other term of imprisonment. The base offense level is 39 because the offense involved more than 90,000 kilograms of converted drug weight (level 38), increased by one level because some of the drugs were delivered or possessed with intent to deliver within 1,000 feet of a protected location. PSR ¶ 39. There is a 2-level enhancement for maintaining a premises for drug distribution. *Id.* at ¶ 41. Because the defendant was an organizer or leader of the DTG and it involved five or more participants, 4 levels are added to the offense level pursuant to USSG § 3B1.1(a), for an adjusted offense level (subtotal) of 45. *Id.* at ¶¶ 44, 46.[2] The defendant accepted responsibility and assisted authorities with the prosecution of his own misconduct by timely notifying authorities of his intention to plead guilty, therefore the offense level is decreased by 3 levels, resulting in a total offense level of 42. *Id.* at ¶¶ 48-50.

        The defendant has a criminal history score of 11. *Id.* at ¶ 59. However, because the defendant has three prior convictions for drug trafficking, he is considered a career offender, and

---

[2] The government agrees with the U.S. Probation Officer's application of this 4-level enhancement for the reasons set forth in the Addendum to the PSR. Indeed, the facts as admitted by the defendant at his Change of Plea Hearing more than adequately establish that the enhancement is applicable.

he is therefore a Criminal History Category VI. *Id.* at ¶ 61. Based upon a total offense level of 42

and a criminal history category of VI, the initial guideline imprisonment range is 360 months to

life, plus an additional 60-month term of imprisonment required by a conviction for Count 13,

resulting in a total sentencing guideline range of imprisonment of 420 months of life. *Id.* at

¶ 108.

## III.     CONSIDERATION OF THE 3553(a) FACTORS

The Supreme Court has declared, "As a matter of administration and to secure nationwide

consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v.

United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an

indispensable resource for assuring appropriate and uniform punishment for federal criminal

offenses.

The Court must consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a), in

determining the appropriate sentence in this case. The Section 3553(a) factors include: (1) the

nature and circumstances of the offense and the history and characteristics of the defendant; (2)

the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for

the law, and to provide just punishment for the offense; (3) the need to afford adequate

deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4)

the need to provide the defendant with educational or vocational training, medical care, or other

correctional treatment in the most effective manner; (5) the guidelines and policy statements

issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[3] Restitution is not an issue in this case.

As discussed below, in consideration of the defendant's conduct in this case and his history and characteristics, as well as the advisory Guidelines range, the Government respectfully recommends a sentence at the top of the C-plea range—and below the Guidelines range—of 264 months' imprisonment. While the defendant has demonstrated acceptance of responsibility and there are mitigating factors related to substance abuse and his prior convictions resulting in minimal terms of imprisonment, he also played an instrumental role in a large-scale drug trafficking organization, one responsible for distributing thousands of grams of dangerous narcotics in our area. He faces a mandatory minimum sentence of at least 15 years' imprisonment and, given the drug weight and firearms involved, begins with an adjusted offense level of 42. Accordingly, the Government recommends a sentence of 264 months as "sufficient, but not greater than necessary" to meet the objectives of the Section 3553(a) factors and as the appropriate sentence in this case. *See* 18 U.S.C. § 3553(a).

---

[3] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

**A.    The nature and circumstances of the offense and the history and characteristics of the defendant.**

The defendant was involved in a dangerous enterprise, literally peddling poison that kills people and destroys communities. This Court is all too familiar with the dangers of methamphetamine and especially fentanyl, as the social, economic, and health impacts in this district, and in the City of Philadelphia in particular, are impossible to miss. Each day three or more people die in Philadelphia of a drug overdose. Dozens more are estimated to experience non-fatal overdoses every day, but experts believe that the tracking of those incidents is underreported. In 2023, 79% of the 1,315 overdose deaths in Philadelphia involved fentanyl.[4]

These drugs destroy communities by tearing at the fibers of our society and keeping people living in the devastating cycle of addiction. Fentanyl is a highly addictive and powerful synthetic opioid that is 80-100 times stronger than morphine.[5] In fact, as little as 2 mg of fentanyl – the amount of a few grains of salt – can be fatal.[6] According to information provided by the DEA Philadelphia Division based on intelligence, investigations, and lab-analyzed drug seizures, in 2024, approximately 75% of fentanyl bags seized by DEA in Philadelphia contained

---

[4] *See* DEA, Operation Engage – Philadelphia, https://www.dea.gov/operation-engage/philadelphia#:~:text=This%20chart%20examines%20the%20rate,prevent%20overdose%20deaths%20from%20occurring (last accessed Oct. 15, 2025).

[5] *See* DEA, Factsheets – Fentanyl, https://www.dea.gov/factsheets/fentanyl (last accessed Oct. 15, 2025).

[6] *See* National Institute on Drug Abuse, Fentanyl, https://nida.nih.gov/research-topics/fentanyl#addictive (last accessed Oct. 15, 2025).

more than a lethal dose of fentanyl. Methamphetamine is a powerful and highly addictive stimulant drug, one that is dangerous in its effects taken alone or in combination with other drugs, such as fentanyl.[7] Distribution of this drug has an immensely negative impact on the community, and this defendant has been found guilty of directly contributing to that harm.

And the impact is not limited to just Philadelphia or any particular social, political, ethnic, or economic group. The impact of fentanyl and methamphetamine does not discriminate; it affects every single county in this district and has the potential to destroy any family.

The defendant had a direct role in contributing to this state of devastation and destruction. His conviction makes clear that he is responsible for distributing thousands of grams of both drugs into the community. These are significant amounts of deadly drugs. The weight of fentanyl distributed by this defendant and his organization is equivalent to tens of thousands of individual packets of fentanyl,[8] each individual dose capable of instantly killing the consumer regardless of the person's history or level of addiction.

Moreover, the defendant, whose role was neither casual nor minimal, profited from the addiction and harm caused by his product. The fentanyl distributed and possessed with intent to distribute by the defendant had an estimated street value of tens of thousands of dollars.

Drug trafficking is a dangerous activity, and the defendant magnified that danger by

---

[7] *See* National Institute on Drug Abuse, Methamphetamine, https://nida.nih.gov/research-topics/methamphetamine (last accessed Aug. 26, 2025)

[8] A kilogram of fentanyl is capable of producing approximately 35,000 bags of fentanyl.

arming himself with firearms, ones he was prohibited from having due to his criminal record. Indeed, the firearms possessed by the defendant were not for any purpose other than to protect his drug product, profits and persona. Moreover, these firearms were not all simple handguns, as one was an AK 47 style rifle – an intense weapon meant to instill fear and respect on the streets.

This is not the defendant's first encounter with the criminal justice system, in fact, far from it. The defendant's involvement in criminal activity began when he was a juvenile, over 20 years ago. Every few years the defendant was arrested and convicted of a new crime, often for possession with intent to distribute ("PWID"). While some of these convictions are based upon minimal drug quantities, he does stand convicted of multiple PWID offenses, with at least one, in 2012, involving bulk quantities of heroin. The defendant was afforded significant breaks, often receiving probation or county jail sentences. Yet he never learned – he squandered those chances, repeatedly violating probation and continuing to engage in new criminal activity. All of that being said, it appears the longest prison sentence the defendant has completed is approximately 20 months, on the case docketed at 46-CR-0001607-2019, a fact this Court can take into consideration in varying downward from the guidelines to the recommended C-Plea range.

All things considered, the Government submits that a sentence of 264 months' imprisonment, which is ***156 months below*** the defendant's guideline range, would appropriately reflect the circumstances and nature of the defendant's offense as well as his criminal history and characteristics, while still taking into account his acceptance of responsibility.

14

**B.    The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

As stated above, the defendant was involved in committing very serious offenses. Methamphetamine and fentanyl are dangerous and highly addictive drugs, and the defendant was trafficking in large amounts. The Court should embrace the need to protect the public from the defendant so that he can no longer distribute drugs and possess deadly weapons through the streets of Philadelphia and Montgomery County.

Thus, the requested sentence of 264 months of imprisonment is a sentence that reflects the seriousness of the crimes the defendant has committed and promotes respect for the law.

**C.    The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

The sentence the Court imposes should provide both specific and general deterrence to criminal conduct. The defendant's actions in this case, in light of his criminal history, warrant a lengthy sentence to prevent him from committing further crimes. Moreover, the case itself is a proper vehicle to demonstrate a need to deter the public from committing these types of crimes. The Court is presented with an opportunity to demonstrate to the community that trafficking methamphetamine and fentanyl and illegally possessing dangerous firearms, will result in a long prison sentence. The defendant's conduct speaks for itself – it was serious and harmful to society and should be punished accordingly.

**D.    The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

There is no known need in this case to adjust the sentence in order "to provide the

15

defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). A long sentence will afford him ample opportunity to further his training, education, care or treatment, should he desire to, through the various educational opportunities provided to inmates within the Bureau of Prisons.

E. **The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The government is not aware of any policy statements that are of particular concern in this case. Imposition of the requested sentence in this case, rooted in statutorily required and nationally applicable mandates, will ensure uniformity among similar defendants who have been found guilty of similar conduct.

Here, a significant sentence of 264 months (22 years), a sentence below the bottom of the applicable guideline range, is appropriate. It appears that U.S. Probation agrees, as detailed in the PSR at Paragraph 124. Accordingly, the government respectfully recommends that the defendant be sentenced to a term of 264 months, a sentence that is lower than the bottom of the applicable guideline range but still weighty. This sentence would serve to deter the defendant and promote general deterrence; it would also incapacitate him for a lengthy period to prevent him from committing future crimes and provide him with an opportunity to seek treatment. This sentence is sufficient but not greater than necessary to meet the goals of sentencing.

## IV.    CONCLUSION

The requested sentence is sufficient but not greater than necessary. The government recommends the Court impose a sentence of 264 months' imprisonment to be followed by 10 years of supervised release. This sentence will serve all of the purposes of sentencing and all of the factors set forth in § 3553(a).

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Lindsey T. Mills*
LINDSEY T. MILLS
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the Government's Sentencing Memorandum has

been served via ECF and electronic mail upon:

Brian McMonagle, Esq.
bmcmonagle@mpmpc.com

*/s/ Lindsey T. Mills*
LINDSEY T. MILLS
Assistant United States Attorney

Date: December 11, 2025